UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
**TAMPA DIVISION**

UNITED STATES OF AMERICA          CASE NO: **8:24-CR-252**

Vs.

**VIRAJ A. PATEL**

_____/

**SENTENCING MEMORANDUM**

    **COMES NOW**, the Defendant, **VIRAJ A. PATEL**, by and through his undersigned attorney hereby files his sentencing memorandum in support of defendants objections asserts the following:

1. **Paragraph 30b Loss- USSG §2B1.1(b)(1)(G):** The Probation Office assesses Mr. Patel a 12 level increase for the loss exceeding $250,000 but less than $550,000. Mr. Patel respectfully submits that the loss amount should be for the actual amount of loss to the victims which is $216,000. The additional $50,000 being assessed to Mr. Patel directly relates to law enforcement attempting to arrest the defendant and identify his co-conspirators. This money was never at risk of being lost as it was being used as bait.

    Mr. Patel objects to the inclusion of this additional $50,000 as probation is expanding the guidelines by using *intended loss*. The United States Sentencing Commission inappropriately expanded the definition of "loss" and

created "intended loss" resulting in a higher advisory guideline calculation than approved by Congress as mandated by the Sentencing Reform Act of 1984.

In *United States v. Dupree,* 54 F.4th 1269, (11th Cir. 2023), The Eleventh Circuit followed the reasoning of other Circuit Courts across the country regarding the use of application notes by holding that they are only to be used when the guidelines themselves are ambiguous. In *Dupree* the Eleventh Circuit granted *en banc* review and held that the Supreme Court's decision in *Kisor v. Wilkie,* 139 S. Ct. 2400 (2019), applies to the commentary's interpretation of the guidelines. *Dupree* recognized when the text of a guideline, like the definition of a "controlled substance offense" in §4B1.2(b), is unambiguously plain, there is no occasion to resort to the commentary.

USSG §2B1.1(b)(1) uses the term "loss" to help determine an advisory guideline range. Application note 3(A) extends the term "loss" to be the greater of the actual or intended loss. In *United States v. Banks,* 55 F. 4th 246 (3rd Cir. 2022), the Court noted that the guideline USSG §2B1.1 does not mention actual versus intended loss and that the distinction appears only in the commentary.

In *United States v. Riccardi, 989 F.3rd 476 (6th Cir. 2021),* the Court noted that the Sentencing Commission placed a $500 minimum in USSG §2B1.1's commentary, not in USSG §2B1.1. Commentary may only interpret the guideline. Therefore a $500 mandatory minimum cannot be described as an interpretation of the word "loss." Rather, it is a substantial legislative rule that belongs in the guideline itself to have force. The application notes can clarify the guidelines in the case of ambiguity; however, the definition of loss is not ambiguous.

In response to the reasoning of several Circuit Courts around the country, the United States Sentencing Commission has now amended the USSG §2B1.1 guideline to include "intended loss" beginning November 1, 2024. Mr. Patel would argue that this amendment would support the Circuit Courts' opinion that the United States Sentencing Commission expanded the guidelines without proper authority and have now appropriately addressed the issue. This guideline amendment does not become effective until November 1, 2024; therefore, Mr. Patel submits that the Court should only consider actual loss in this case which is undisputed at $216,000. This would result in a 10 level increase in his total offense level rather than a 12 level increase.

2. **Paragraph 30d Substantial Part of a Fraudulent Scheme was Committed from Outside the United States- USSG §2B1.1(b)(10)(B)-** The United States Probation Office assesses Mr. Patel two additional levels stating that a substantial part of the fraudulence scheme was committed from outside of the United States. However, in paragraph 14 of the presentence investigation, probation states that, "the conspirators placed telephone calls, often from outside the United States and usually from India…." In order for this guideline enhancement to apply, a "**substantial part**" of the fraudulent scheme must have been committed from outside of the United States. While some of the calls originated from India, some also originated within the United States. Additionally, the victims were in the United States, and the collection of the funds took place in the United States. Mr. Patel would submit that a "substantial part" of the scheme did not take place outside of the United States and he should not receive this enhancement.

3. **Paragraph 34, Minimal Role- USSG §3B1.2(a):** The United States probation office applied a two level reduction to reflect Mr. Patel's minor role in the offense. However, Mr. Patel would submit that he is eligible for a minimal role in the offense. In accordance with Application Note 4 of USSG §3B1.2, a minimum participant is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group.

Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise, and the activities of others is indicative of a role as a minimal participant."

In the instant offense, Mr. Patel was recruited into the conspiracy after the fraud was already ongoing. His role was limited to that of a mule to pick up and deliver money or gold. He did not understand the scope and structure of the criminal activity, he did not participate in the planning or organizing of the activity, he did not have any decision-making authority within the conspiracy, and he benefited far less than anyone else in the conspiracy. Mr. Patel submits that his limited duration and participation in the overall conspiracy qualifies him for a minimal role. In the alternative, Mr. Patel would submit that he would qualify for at least a three-level role reduction if the Court does not find that a four-level reduction is applicable.

       **/s/ Daniel J Fernandez, Esq**
       **DANIEL J. FERNANDEZ, ESQ**
       625 E. Twiggs Street.
       Tampa, FL 33602
       Florida Bar: 295371
       (813) 229-5353